**John B. KILROY, Sr., et al.,
Plaintiffs-Appellants,**

v.

**William D. RUCKELSHAUS, in his official capacity as Administrator of the United States Environmental Protection Agency; United States Environmental Protection Agency, et al., Defendants-Appellees.**

**PACIFIC LEGAL FOUNDATION, a nonprofit California corporation, Plaintiff-Appellant,**

v.

**William CLARK,\* Secretary of the Interior, et al., Defendants-Appellees.**

CA Nos. 82–5894, 82–6097.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 6, 1983.

Decided July 31, 1984.

\* We substitute William Clark, the Secretary of the Interior, as successor to the original appellee James Watt, the former Secretary, pursuant to Fed.R.App.P. 34(a).

Jonathan M. Coupal, Sacramento, Cal., for plaintiffs-appellants.

David C. Shilton, Dept. of Justice, Washington, D.C., for defendants-appellees.

Before SKOPIL, FERGUSON and CANBY, Circuit Judges.

CANBY, Circuit Judge:

Kilroy appeals from a summary judgment in favor of the state and federal defendants.[1] Kilroy had challenged the adequacy of the Los Angeles/Orange County Metropolitan Area Environmental Impact Statement (LA/OMA EIS).

## FACTS

This case is part of a series of lawsuits brought by Pacific Legal Foundation (PLF) and Kilroy, a member of PLF's board of directors.[2] The underlying dispute is over which disposal medium—the sea, the land, or the air—can best accept sewage sludge from the City of Los Angeles Hyperion Wastewater Treatment Plant (Hyperion).

Hyperion discharges sludge into Santa Monica Bay through an outfall pipe extending seven miles into the ocean. It does so pursuant to a national pollutant discharge elimination system (NPDES) permit issued

---

1. The federal defendants are EPA; William Ruckelshaus, in his official capacity as EPA administrator; and Paul DeFalco, in his official capacity as EPA regional administrator. The state defendants are the State Water Resources Control Board; John E. Bryson, in his official capacity as Chairman; Region IV of the California Regional Water Control Board; and Raymond M. Hertel, in his official capacity as Executive Officer.

For clarity and convenience, we refer to all defendants as "EPA."

2. Other cases filed by PLF and Kilroy concerning ocean disposal of sludge are:

a. *Pacific Legal Foundation v. Costle,* 586 F.2d 650 (9th Cir.1978), *rev'd in part,* 445 U.S.

198, 100 S.Ct. 1095, 63 L.Ed.2d 329, *reh'g denied,* 446 U.S. 947, 100 S.Ct. 2177, 64 L.Ed.2d 804 (1980).

b. *Pacific Legal Foundation v. Watt,* No. 78–3464–AAH (SX) (C.D.Cal. March 16, 1982).

c. *Pacific Legal Foundation v. Costle,* No. 5–79–429–PCW (E.D.Cal. October 31, 1979).

d. *Pacific Legal Foundation v. Costle,* No. 79–7304, renumbered and consolidated with *Natural Resources Defense Council, Inc. v. EPA,* No. 79–1639 (D.C.Cir.1981). Decision was rendered in *Natural Resources Defense Council v. EPA,* 656 F.2d 768 (D.C.Cir.1981).

e. *Pacific Legal Foundation v. Costle,* No. K–80–2 (D.C.Alaska, June 26, 1981).

by the Environmental Protection Agency (EPA) and the California Regional Water Quality Control Board in August 1975. The permit required that the discharge cease by April 1978; it also established interim goals for sludge discharge reduction, and required full secondary treatment of wastes by October 1979.[3]

When the City failed to meet the various permit deadlines the United States sued to compel compliance. *United States v. City of Los Angeles,* (C.D.Cal. No. CV77–304–HP). In 1980, the parties entered into a consent decree which requires the City to terminate all ocean disposal of sludge no later than July 1, 1985. The City applied for and received a new NPDES permit consistent with the consent decree deadline.

To meet the 1975 permit interim requirements for phasing out sludge discharge, the City proposed an interim project under which sludge would be centrifugally dewatered and then trucked to sanitary landfills. PLF filed two separate actions now before us as challenges to the interim project: *Kilroy v. Ruckelshaus* and *PLF v. Watt.* In the first of these two actions, Kilroy claimed: (1) that the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 et seq., required EPA to prepare an EIS on the interim project before taking steps to implement it; (2) that NEPA required EPA to prepare an EIS on its decision to eliminate ocean disposal of sewage sludge; and (3) that EPA failed to consider ocean dumping of sewage sludge as an alternative to the interim project, in violation of both NEPA and the Clean Water Act, 33 U.S.C. § 1251 et seq.

For reasons unrelated to the lawsuits, the interim project was never implemented, and it was replaced by the Hyperion Energy Recovery System (HERS), which involves thermal processing of sludge. *Kilroy v. Ruckelshaus* did not become moot, however, because Kilroy continued to assert his claims against the new Hyperion proposal.

Kilroy sought a preliminary injunction, which was denied. *PLF v. Quarles,* 440 F.Supp. 316 (C.D.Cal.1977). We affirmed. *Kilroy v. Quarles,* 614 F.2d 225 (9th Cir.), *cert. denied,* 449 U.S. 825, 101 S.Ct. 88, 66 L.Ed.2d 29 (1980). While that appeal was pending, the final EIS was completed for the Hyperion Project. After remand, the federal and state defendants filed motions for summary judgment on "all claims" raised by Kilroy, and Kilroy cross-moved for a partial summary judgment declaring the final EIS to be inadequate. On May 25, 1982, the district court entered judgment for defendants on all claims raised by Kilroy, and upheld the validity of the final EIS for the Hyperion project. Kilroy has appealed and that appeal is now before us as *Kilroy v. Ruckelshaus.* Kilroy sought an injunction and stay pending appeal, but these were denied.

The second action contesting the abandoned interim project was *PLF v. Watt,* challenging the project on the ground that it violated the Endangered Species Act, and also challenging the adequacy of the EIS. The district court granted summary judgment to PLF on all grounds except that challenging the adequacy of the EIS. This court reversed in part and vacated in part. *PLF v. Watt,* 703 F.2d 576 (9th Cir.1983) (memorandum). On remand, PLF continued to assert the inadequacy of the EIS, now for the substituted Hyperion project. The district court ruled that its judgment in *Kilroy v. Ruckelshaus* was res judicata on that issue, and precluded relitigation of the adequacy of the EIS. By agreement of the parties, PLF has taken this appeal, now before us, as a protective measure, so that the district court's ruling of res judicata could be undone if *Kilroy v. Ruckelshaus* were reversed. The merits of the entire controversy, involving both appeals, can therefore be dealt with by addressing, as we now do, the issues raised by *Kilroy v. Ruckelshaus.*

---

**3.** Permit extensions were granted and these extensions were challenged and upheld in *PLF v. Costle,* 586 F.2d 650 (9th Cir.1978), *rev'd in part,*

445 U.S. 198, 100 S.Ct. 1095, 63 L.Ed.2d 329 (1980).

## ISSUES

1. Whether the district court deprived Kilroy of a full and fair opportunity to present his case.

2. Whether the district court erred in granting EPA summary judgment on all claims raised by Kilroy.

3. Whether the district court erred in holding the EIS adequate.

## DISCUSSION

### I. *Full and Fair Opportunity to Present Case*

#### A. *Notice*

■ Kilroy argues that the documents filed by the parties did not provide notice that the adequacy of the EIS would be decided by way of summary judgment. He contends that by granting summary judgment in favor of EPA the district court deprived him of a full and fair opportunity to present his case.

Kilroy was on notice that EPA had requested summary judgment "on all claims raised by plaintiff." The first amended complaint does not directly address the adequacy of the EIS because the EIS was not completed at that time. Nonetheless, when Kilroy wanted to raise the issue in his own motion for partial summary judgment, he claimed that the adequacy of the EIS was raised by his complaint and that EPA had notice of that fact. We fail to see how the adequacy issue was raised by his motion for partial summary judgment but was not a claim addressed by EPA's motion for summary judgment. It was therefore not error for the district court to rule upon the adequacy of the EIS.

This is not a case where summary judgment was granted on an issue as to which the losing party had no opportunity to present argument. *See, e.g., Fountain v. Filson*, 336 U.S. 681, 69 S.Ct. 754, 93 L.Ed. 971 (1949). Nor is this a case where the court entered summary judgment in favor of a party who had not made such a request. *See, e.g., Matter of Hailey*, 621 F.2d 169 (5th Cir.1980). Kilroy's reliance on these cases is misplaced.

#### B. *Local Rules*

■ Kilroy further claims that the district court violated local rule 3.14.4. This rule provides that material facts which are adequately supported by the moving party are admitted to exist without controversy except to the extent that they are included in a statement of genuine issues and controverted by affidavit or other written evidence. Because EPA did not controvert Kilroy's "proposed findings of fact," Kilroy contends that the district court should have accepted them as true.

Our reading of Kilroy's proposed findings of fact reveals that they are actually legal conclusions relating to the adequacy of the EIS and were disputed by EPA in its memoranda. The district court was not obligated to accept Kilroy's legal conclusions as true simply because he characterized them as statements of fact. The local rules were not violated.

### II. *Summary Judgment*

■ We may affirm a summary judgment only if, after viewing the evidence in the light most favorable to the party opposing the motion, we find that there were no genuine issues of material fact. *United States v. Standard Oil Co. of California*, 618 F.2d 511, 519 (9th Cir.1980). Kilroy argues that the district court in rendering summary judgment adjudicated disputed material facts by ruling that the EIS adequately discussed (1) the appropriate "no project" alternative; and (2) ocean dumping alternatives. Even when the evidence is viewed in the light most favorable to Kilroy, there are no genuine issues of material fact. While Kilroy doubtless disputed these rulings, they are conclusions of law and not findings of fact.

■ Kilroy also argues, for the first time on appeal, that the EIS conceals air pollution data. EPA, however, moved and was granted summary judgment on all claims raised by Kilroy. Kilroy stated in his motion for partial summary judgment that there were no undisclosed factual is-

sues left to be resolved. Where the moving papers do not reveal the presence of a factual controversy, the unsuccessful adversary cannot assert it as a ground of his appeal. *DeBardeleben v. Cummings*, 453 F.2d 320, 324 (5th Cir.1972).

### III. *Compliance with NEPA EIS Requirements*

### A. *Standard of Review*

■ The district court's review of an EIS is governed by the Administrative Procedure Act, 5 U.S.C. § 706(2)(D); agency action may be set aside if it was undertaken without observance of procedures required by law. *Lathan v. Brinegar*, 506 F.2d 677, 693 (9th Cir.1974) (en banc). Courts are not to "flyspeck" EISs. "The preparation of such a statement necessarily calls for judgment, and that judgment is the agency's. But the courts can, and should, require full, fair, bona fide compliance with NEPA." *Id.*

■ We review the district court's conclusion that the EIS is adequate to determine whether that conclusion is based upon an erroneous legal standard or upon clearly erroneous findings of fact. *Save Lake Washington v. Frank*, 641 F.2d 1330, 1334 (9th Cir.1981).

### B. *Compliance with National Environmental Policy Act (NEPA)*

#### 1. *"No action" alternative*

■ NEPA, 42 U.S.C. §§ 4321 et seq. (1976 and Supp. V 1981) and EPA regulations require the EIS to discuss the "no action" status quo alternative. *See* 40 C.F.R. 6.203(c). This alternative is the standard by which the reader may compare the other alternatives' "beneficial and adverse impacts related to the applicant doing nothing." *Id.* The Hyperion EIS discusses the dewatering and trucking interim

project, which was never implemented, as the "no action" alternative. Kilroy argues that it clearly should have presented the existing outfall disposal method as the "no action" alternative, and that this omission is fatal to the EIS.

While Kilroy's argument has some facial appeal, it suffers from two major flaws. First, the EIS does include some discussion of the existing outfall disposal method in its description of the interim project. The dewatering and trucking interim project requires anaerobically digested sludge in excess of dewatering capacity to be discharged to the ocean through existing outfall systems. Dewatered sludge in excess of downstream composting capacity would be trucked to sanitary landfills for disposal. Therefore, although the existing outfall disposal method was not depicted as the status quo alternative, it was discussed because the design of the interim project incorporated use of the existing system.[4]

The second and greater flaw in Kilroy's argument is that it overlooks the relevant legal restrictions imposed on the existing outfall disposal method. Over the years, Congress has shown increasingly less tolerance for the discharge of sludge into marine waters. The strongest expression of this policy came in December 1981 when Congress amended the Clean Water Act by the "Municipal Wastewater Treatment Construction Grant Amendments of 1981." H.R. 4503, 97th Cong., 1st Sess. (1981), U.S.Code Cong. & Admin.News 1981, p. 2629, 2656, 127 Cong.Rec. H 9515 (daily ed. Dec. 14, 1981). The amendments address the question of discharges into territorial waters[5] and provide, *inter alia*, that "[n]o permit issued under this subsection [§ 301(h)] shall authorize the discharge of sewage sludge into marine waters." *Id.*, § 22(c), 127 Cong.Rec. at H 9518, *codified*

---

4. In addition to this discussion in the EIS of the existing outfall there also was discussion of a twelve mile outfall pipe. EPA contends that that discussion provides similar information regarding outfall disposal.

5. The Clean Water Act defines "territorial seas" as "the belt of the seas measured from the line of ordinary low water along that portion of the coast which is in direct contact with the open sea and the line marking the seaward limit of inland waters, and extending seaward a distance of three miles." 33 U.S.C. § 1362(8).

*at* 33 U.S.C. § 1311(h). The Joint Explanatory Statement of the Committee of Conference states that under this amendment "no permit issued under Section 301(h) shall authorize the discharge of sludge into marine waters from outfalls." 127 Cong. Rec. at H 9520. Thus, once the NPDES permit currently authorizing the seven mile Hyperion outfall expires, it cannot be renewed. Congress' express intent is to terminate all sludge discharge through outfalls.

In addition to the legislative barrier to outfall sludge disposal, the City of Los Angeles entered into a consent decree with the United States which requires the City to terminate all ocean sludge disposal no later than July 1, 1985. *United States v. City of Los Angeles*, (C.D.Cal. No. CV77–304–HP). The current NPDES permit is consistent with the consent decree deadline.

We agree that these legal barriers to the continuance of the present method of disposal do not automatically render discussion of that alternative unnecessary. In some cases an alternative may be reasonable, and therefore required by NEPA to be discussed in the EIS, even though it requires legislative action to put it into effect. *See Natural Resources Defense Council, Inc. v. Morton*, 458 F.2d 827, 837 (D.C.Cir.1972). But in deciding whether an alternative is reasonable, we may certainly take into account the strength and vitality of legislation that forbids it. "We do not suppose Congress intended an agency to devote itself to extended discussion of the environmental impact of alternatives so remote from reality as to depend on, say, the repeal of the antitrust laws." *Id; see Sierra Club v. Adams*, 578 F.2d 389, 396 (D.C. Cir.1978).

Here Congress has made a considered and recent choice to prohibit sludge discharge through ocean outfalls. *See* 33 U.S.C. § 1311(h). While that legislation may not be quite as impregnable as the antitrust laws, it nevertheless renders the outfall alternative substantially remote from reality. It is buttressed by a consent decree that forbids continuance of the ex-

isting outfall disposal. In the face of these obstacles, we cannot conclude that continuance of outfall disposal was a reasonable alternative that was required to be set out in the EIS. Nor would it have been accurate to depict continuance of the outfall disposal method as the "no action" alternative. As the district court stated in its order granting summary judgment:

> The Water Act and the consent decree prohibit the City from disposing of sludge into the ocean from the Hyperion outfall. Even if the City took no action to develop a new disposal system—the situation the no action alternative is required to describe—the City would still be prohibited from disposal of sludge into the ocean through the Hyperion outfall and would have to use some alternative method such as the disposal of dewatered sludge into sanitary landfills. Thus, the no action alternative statement accurately describes what would occur if the City took no action toward developing a new sludge disposal project.

Thus the dewatering and trucking interim project with its concomitant discussion of the existing outfall was an appropriate and reasonable benchmark against which to measure the other available alternatives. The discussion was sufficient to enable the decision-makers, with public participation, to make a reasoned choice. *See California v. Block*, 690 F.2d 753, 761 (9th Cir.1982); *Save Lake Washington v. Frank*, 641 F.2d at 1334.

2. *Discussion of Ocean Dumping Alternatives*

■ Kilroy claims that both the EIS and the district court dealt too superficially with the ocean dumping alternatives. The district court's analysis, however, properly rests on whether ocean dumping is a reasonable alternative and whether, in the context of this case, it was accorded a reasonable discussion in the EIS. *See Sierra Club v. Adams*, 578 F.2d at 396. The district court concluded that the extent to which the EIS should have addressed ocean disposal alternatives depended on the extent of the restrictions imposed by the Fed-

eral Water Pollution Control Act, 33 U.S.C. §§ 1251 et seq., the Marine Protection, Research and Sanctuaries Act, 33 U.S.C. §§ 1412 et seq., (1976 & Supp. V 1981), the NPDES permit, and the consent decree.

After analyzing the legal restrictions, the district court stated that while it may be reasonable to require the EIS to mention ocean disposal, it would be unreasonable and wasteful to require extensive development and discussion of such a remote alternative. We agree. *See State of California v. Block,* 690 F.2d at 767. In addition, the district court found that, contrary to Kilroy's claim, the EIS did discuss ocean disposal in considerable detail.

The district court's conclusion relied in part on prior opinions issued in earlier stages of this litigation which harmonized the Marine Protection Act and the Clean Water Act with NEPA. Although the Marine Protection Act does not completely ban deep ocean dumping, the district court's prior opinion stated:

> [I]t would mock Congress' long-range comprehensive goal of water quality improvement to require the EPA to order the cessation of sludge disposal from deep ocean outfalls while requiring the EPA to consider, as an alternative disposal method, the dumping of this same sludge by vessel into the deep ocean at the pipe's end or at any other place on the face of the water.

> .     .     .     .     .

> [A]s long as there exists a practical land disposal method, the EPA need not evaluate the alternative of deep ocean dumping when it formulates conditions for an NPDES permit or when it authorizes a grant of federal funds to develop a project designed to achieve compliance with the Water Act.

*Pacific Legal Foundation v. Quarles,* 440 F.Supp. at 328, *aff'd, Kilroy v. Quarles,* 614 F.2d 225 (9th Cir.), *cert. denied sub nom. Kilroy v. Costle,* 449 U.S. 825, 101 S.Ct. 88, 66 L.Ed.2d 29 (1980).

We continue to agree with this assessment. Our review of the EIS reveals more than sufficient discussion of ocean disposal alternatives to permit a reasoned choice.

## CONCLUSION

Kilroy had a full and fair opportunity to present his case before the district court. The district court's grant of summary judgment in *Kilroy v. Ruckelshaus* in favor of EPA rested on proper legal standards and is AFFIRMED. The district court's ruling in *PLF v. Watt* that the judgment in *Kilroy v. Ruckelshaus* precludes PLF from relitigating the adequacy of the Final LA/OMA EIS is also AFFIRMED.