Harriet G. LaFLAMME, Petitioner,

v.

FEDERAL ENERGY REGULATORY COMMISSION; Department of Agriculture; Sayles Hydro Associates, Respondents.

No. 90–70448.

United States Court of Appeals, Ninth Circuit.

Submitted June 3, 1991.*

Decided Sept. 30, 1991.

---

\* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Glenn Kottcamp, Nevada City, Cal., for petitioner.

Hanford O'Hara, Washington, D.C., for respondent F.E.R.C.

Jeffrey Kehne and Stuart Shelton, U.S. Dept. of Justice, Washington, D.C., for respondent Clayton K. Yeutter, Secretary of Agriculture.

Virginia Cahill, McDonough, Holland & Allen, Sacramento, Cal., for respondent Sayles Hydro Associates.

Before SCHROEDER, NORRIS and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

Petitioner petitions for review of an order of the Federal Energy Regulatory Commission denying a motion for rehearing on the Commission's order reinstating a license to develop a hydroelectric power facility on federal lands. We previously remanded the matter to the Commission to consider the environmental impacts of the project, *LaFlamme v. FERC*, 852 F.2d 389 (9th Cir.1988). An environmental assess-

ment and finding of no significant impact were prepared on remand; the order reinstating the license relied on those environmental documents. We have jurisdiction over this appeal pursuant to 16 U.S.C. § 825*l* (b), and we now affirm the Commission's Order Denying Petitioner's Request for Rehearing of the Commission's October 27, 1989, Order Amending and Reinstating a license for a hydroelectric power plant.

## I.

This case involves a challenge to a license issued by the Federal Energy Regulatory Commission ("the Commission") under the Federal Power Act ("FPA") to construct a hydroelectric power project known as the Sayles Flat Project ("the Project"). The Commission originally granted the license to Joseph M. Keating ("Keating") on September 26, 1983, and approved a transfer of the license to Sayles Hydro Associates ("Sayles") in 1987.

On a petition filed by Harriet LaFlamme ("Petitioner"), we suspended the license and remanded the matter to the Commission. *LaFlamme v. FERC,* 852 F.2d 389, amending 842 F.2d 1063 (9th Cir.1988).[1] Specifically, we remanded because the Commission issued the license without preparing either an environmental assessment ("EA") or an environmental impact statement ("EIS"), and "for further consideration of the issues raised by petitioner LaFlamme concerning the Sayles Flat Project recreational use and visual quality, cumulative impact and need for a comprehensive plan." *See LaFlamme,* 852 F.2d at 403.

On remand, the Commission issued a draft EA and accepted public comment.

The Commission issued a final EA and a finding of no significant impact ("FONSI") on October 10, 1989. On October 27, the Commission issued an order amending and reinstating the license to Sayles.

The United States Forest Service ("Forest Service") submitted comments that criticized the draft EA's conclusion that the Project would not have a significant environmental impact, and requested that an EIS be prepared by the Commission. In October 1989, Sayles and the Forest Service entered into a stipulation settling litigation between them.[2] The stipulation provided that the Forest Service would issue a new Special Use Permit ("SUP") to Sayles, and that Sayles would adhere to the terms and conditions of the permit throughout the construction and operation of the Project. The Forest Service thereafter requested that the Commission include the settlement stipulation into the Sayles license, which the Commission did. The Forest Service then retracted its critical comments of the draft EA and its request for preparation of an EIS in an October 25 letter to the Commission, and issued a SUP to Sayles on November 30, 1989.

Petitioner filed an application for stay and rehearing with the Commission on November 13, 1989. The Commission issued an Order Denying Rehearing on September 12, 1990, and petitioner filed the instant petition for review on September 14, 1990.

## II.

The FPA, 16 U.S.C. §§ 792 et seq. (1988), gives the Commission authority to regulate the nonfederal development of hydroelectric power on federal lands. The Commission is empowered to issue licenses for the

---

1. Our original opinion vacated the license in its entirety. Intervenor Sayles filed a petition for rehearing requesting that we modify our opinion and not vacate the license pending the completion of the required analysis on remand, thereby allowing Sayles to continue operating the facility during remand. We thereafter amended our opinion to suspend rather than vacate the license.

2. Sayles' predecessor in interest, Keating, filed a declaratory judgment action in the Eastern District of California challenging the Forest Service's authority to enforce a Special Use Permit

("SUP") for the Project issued in 1986. Keating argued that the Commission had exclusive authority over licensing of hydroelectric power facilities under the FPA.

Petitioner filed an administrative challenge to the SUP in 1986, arguing that the Forest Service's decision to issue the SUP, the conditions contained in the SUP, and the Forest Service's determination that it could issue the SUP without preparing an EIS were in error. Petitioner's appeal was rejected by the regional forester, and Petitioner made no further appeal of that SUP.

construction and operation of these facilities. 16 U.S.C. § 797(e) (1988) [section 4(e) of the Act]. Prior to issuing a license, the Commission must determine that the project is "best adapted to a comprehensive plan for improving or developing a waterway." 16 U.S.C. § 803(a) (1988) [section 10(a) of the Act].

■ Licensing decisions are also subject to NEPA, 42 U.S.C. §§ 4321 et seq. (1988). NEPA mandates that for all "major Federal actions significantly affecting the quality of the human environment," a detailed statement must be prepared to analyze the environmental impact of the proposed action, adverse environmental impacts which cannot be avoided, and alternatives to the proposed action. 42 U.S.C. § 4332(2)(C) (1988). If an EIS is not statutorily required, the agency in question must prepare an EA. 40 C.F.R. § 1501.4(b) (1990). Based on the EA, the agency must determine whether to prepare an EIS. 40 C.F.R. § 1501.4(c) (1990). If the agency determines that an EIS is not required, it must prepare a FONSI. 40 C.F.R. § 1501.4(e) (1990). NEPA review of the environmental effects of issuance of a hydroelectric license requires consideration of site-specific environmental impacts of the project, as well as the cumulative environmental effects of the project. *See LaFlamme*, 852 F.2d at 399–402.

### III.

#### A. *Jurisdiction*

In our prior opinion, we specifically ordered the Commission to consider the issues of recreational use, visual quality, and cumulative impact under NEPA, and the need for a comprehensive plan under the FPA. *LaFlamme*, 852 F.2d at 403. The Commission, in its order amending and reinstating the license, did not limit its analysis to these specific issues; rather, "the Commission staff performed a comprehensive resource analysis of the potential impacts of each alternative in order to determine whether, or under what conditions, the license should be reinstated." Order Reinstating License at 2.

■ We are required by statute to consider only those issues that Petitioner raised in her request for rehearing, or those issues that could not reasonably have been raised at that time. "No objection to the order of the Commission [denying the application for rehearing] shall be considered by the Court unless such objection shall have been urged before the Commission in the application for rehearing unless there is a reasonable ground for failure to do so." 16 U.S.C. § 825*l*(b) (1988); *see also LaFlamme*, 852 F.2d at 397 & n. 3. Petitioner's request for rehearing from the Commission raised the following issues:

(1) violation of NEPA by "improperly waiving" an EIS;

(2) lack of a comprehensive plan;

(3) no finding that project power is necessary;

(4) unlawful deferral of issues of public interest to "post-license consideration";

(5) failure to consider Sayles' "lack of fitness for license";

(6) failure to hold an evidentiary hearing before issuance of the license;

(7) improper subordination of the public interest to protection of Sayles' economic interest;

(8) failure to find that issuance of the license was consistent with the federal reservation; and

(9) failure to include the conditions imposed by the Secretary of Agriculture under section 4(e) of the FPA.

In the Order Denying Petitioner's Motion for Rehearing, the Commission addressed each of these arguments, and rejected each as the basis of a meritorious rehearing request.

In the opening appellate brief, Petitioner raises the following arguments:

(1) the Commission violated the law of the case;

(2) the Commission failed to prepare a comprehensive plan;

(3) the Commission and the Forest Service acted unreasonably in failing to prepare an EIS;

(4) the Commission erred in requiring that Petitioner meet a burden of proof

that would establish her claims to a scientific certainty;

(5) the Commission erred in deferring consideration of licensing factors to post-licensing studies;

(6) the Commission violated the FPA by subrogating the public interest to Sayles' *economic interest* based on non-record, ex parte communications; and

(7) the Forest Service's retraction of its comments critical of the EA and its request for preparation of an EIS violated NEPA and the Federal Land Policy and Management Act of 1976 (FLPMA).

Petitioner's contention that the Commission "violated the law of the case" is a vague reiteration of other claims made in the past and made elsewhere in the appellate brief. Therefore, we do not consider this argument separately.

*B. Comprehensive Plan*

■ Petitioner contends that the Commission has failed to develop a comprehensive plan for the Project, as required by our remand. As we noted in our prior opinion, the FPA requires that a project "be best adapted to a comprehensive plan for improving or developing a waterway ... for other beneficial public uses, including recreational purposes." 16 U.S.C. § 803(a)(1) (1988).

The Commission argues that a document entitled "comprehensive plan" is not required; it contends that what is required of it is to "consider the comprehensive picture of the water system of which the project is a part, based on the record developed in each particular proceeding." Order Denying Rehearing at 25, citing *LaFlamme*, 852 F.2d at 402.

■ In *LaFlamme*, we held that the Commission must, under the FPA, consider all facts relevant to the public interest in developing a comprehensive plan. *LaFlamme*, 852 F.2d at 402–03; *see also Udall v. F.P.C.*, 387 U.S. 428, 450, 87 S.Ct. 1712, 1724, 18 L.Ed.2d 869 (1967); *National Wildlife Federation v. FERC*, 801 F.2d 1505, 1507 (9th Cir.1986). This consideration necessarily includes a comprehensive analysis of the water system of which the

Project is a part, and the interdependent impact of the Project on other projects in the region. *LaFlamme*, 852 F.2d at 402–03.

The EA's analysis of the water system, and the Project's impact on that system is adequate. EA at 12–13, 51–57, 66–68. The EA fully examines the effects of the Project including its cumulative impacts combined with other proposed projects, and also fully considers whether the Project is consistent with the California State Water Resources Control Board Water Quality Control Plan (Basin Plan), the Eldorado National Forest Management Plan, the El Dorado County Comprehensive Development Plan, and six other comprehensive plans developed for California, which were determined to be not specific to the project area. The EA also made a complete analysis of all environmental resources under the three alternatives presented (licensing the Project, licensing the Project with modifications, and restoring the site).

The Order Reinstating the License and the Order Denying Rehearing both specifically consider and rely on the EA. The record supports the Commission's conclusion that it satisfied the FPA's requirement of developing a comprehensive plan for the Project, despite the fact that no document entitled "Comprehensive Plan" was prepared or filed.

*C. Failure to Prepare EIS*

■ Petitioner next contends that the Commission's failure to prepare an EIS was unreasonable. "In this circuit, an EIS must be prepared if substantial questions are raised as to whether a project ... *may* cause significant degradation of some human environmental factor. The plaintiff need not show that significant effects *will in fact occur*, but if the plaintiff raises substantial questions whether a project may have a significant effect, an EIS *must* be prepared." *LaFlamme*, 852 F.2d at 397 (emphasis in original) (internal quotations and citations omitted).

We review the Commission's decision not to prepare an EIS by considering whether

it reasonably concluded that the Project would have no significant adverse environmental consequences. *See LaFlamme*, 852 F.2d at 397. We must defer to the Commission's judgment so long as we can be sure that it is "fully informed and well-considered." *Id.* at 398.

Petitioner repeatedly contends that the Commission violated NEPA and our holding in *LaFlamme* by failing to prepare an EIS. Our decision in *LaFlamme* did not require the preparation of an EIS; the EA and FONSI prepared by the Commission adequately address each of the specific issues we ordered the Commission to consider. Similarly, an EIS is not required by NEPA or by the CEQ regulations. *See* 42 U.S.C. §§ 4321 et seq. (1988); 40 C.F.R. §§ 1500–08 (1990). Neither by virtue of our opinion nor by the applicable regulations was an EIS required.

Petitioner's only specific argument on appeal is that the Commission erred in deciding to prepare an EA rather than an EIS for the Project on remand. As to this contention, Petitioner notes that the EA is long and complex, although it should ideally be a concise document. *See* 40 C.F.R. § 1508.9 (1990). We note that the purpose of an EA is to help the agency in question determine whether an EIS is needed. 40 C.F.R. § 1501.4(c) (1990). We find no error in the EA's length or complexity, and we find that the Commission made a thorough review before determining that an EIS was not necessary.

Although Petitioner's argument on appeal was limited to the previously discussed issue, we have reviewed the record de novo, and have examined Petitioner's earlier arguments regarding the lack of reasonableness in the Commission's failure to prepare an EIS. In the Request for Rehearing, Petitioner challenged the Commission's determination that an EIS was unnecessary on procedural grounds, as well as listing all of the alleged errors in the EA and the Order Reinstating the License. Based on all of these grounds, Petitioner argued that it was error for the Commission not to prepare an EIS for the Project. The Commission addressed each of these arguments individually in the Order Denying Rehearing, and we find no error in its analysis.

We find nothing in the briefs or the record on appeal that leads us to believe that the Commission's decision not to prepare an EIS was not fully informed and well-considered. The Commission reasonably concluded that the Project will have no significant adverse environmental consequences. Therefore, we find no error in the EA and FONSI, or in the decision not to prepare an EIS.

### D. Petitioner's Burden of Proof

Petitioner contends that the Commission rejected the arguments raised in the request for rehearing because it applied an erroneous burden of proof, requiring her to "substantiate the magnitude and significance of impacts to a scientific certainty." Petitioner's opening brief at 16–17. Petitioner could not have raised the issue of the burden of proof applied in the Order Denying Rehearing until now. Therefore, there was a reasonable ground for Petitioner's failure to raise this argument in the request for rehearing, and accordingly we consider it on appeal for the first time. *See* 16 U.S.C. § 825*l* (b).

We find nothing in the Order Denying Petitioner's Request for Rehearing that supports the assertion that the Commission impermissibly required Petitioner to prove her claims to a scientific certainty. Many of Petitioner's claims before the Commission, as here, were vague, unintelligible and unrelated to the relevant law and factual setting. That the Commission did not agree with Petitioner that the environmental impacts of the Project would be significant or adverse does not mean that the Commission required Petitioner to prove her claims to a scientific certainty. We reject Petitioner's arguments on this ground.

### E. Consideration of Post–Licensing Studies

Petitioner next contends that the Commission erred in deferring consideration of ten listed issues to post-licensing studies. Petitioner's opening brief at 36.

We have previously held that the Commission is required to conduct necessary

studies on fishery issues prior to issuing a license to a hydropower project. *Confederated Tribes and Bands of the Yakima Indian Nation,* 746 F.2d 466, 471 (9th Cir. 1984).

Unlike *Yakima,* however, this case involves the issuance of a license with full consideration of the environmental issues. The order does leave open the possibility of amending the license based on the results of post-licensing monitoring, but we have previously upheld the exercise of such authority by the Commission. *California v. FPC,* 345 F.2d 917, 924–25 (9th Cir.), *cert. denied,* 382 U.S. 941, 86 S.Ct. 394, 15 L.Ed.2d 351 (1965). We hold that there was no error in the Commission's decision to allow the possibility of modifications to the requirements of the license based on post-licensing monitoring, as the Commission performed the necessary pre-licensing studies.

### F. Consideration of Non–Record Communications Regarding Licensee's Economic Interest

■ Petitioner next makes a vague argument that the Commission subrogated its analysis of the public interest to Sayles' economic interest and, further, that this subrogation was based on a determination of economic feasibility made with reference only to non-record, ex parte communications.

We find no merit in this argument. The Commission properly considered, as a part of its analysis, the economic viability of the Project; there was no error in this consideration. *See* FPA, 16 U.S.C. §§ 797(e) and 803(a)(1) (1988).

### G. Forest Service's Retraction of Comments and Failure to Prepare an EIS

■ Petitioner also asks us to review the Forest Service's October 25 letter to the Commission withdrawing its request for preparation of an EIS, and the Forest Service's failure to prepare an independent EIS.

"[A]dministrative orders are not final and reviewable 'unless and until they impose an obligation, deny a right, or fix some legal relationship as a consummation of the administrative process.'" *Ukiah Valley Medical Center v. FTC,* 911 F.2d 261, 264 (9th Cir.1990). The Forest Service's letter did not impose an obligation on, deny a right to, or fix a legal relationship between or among Petitioner, the Forest Service, or the Commission. Therefore, the letter is not an "order" reviewable by this court, and we dismiss Petitioner's petition as to this issue for lack of jurisdiction.

■ Petitioner contends that the Secretary of Agriculture, through the Forest Service, erred in failing to prepare an independent EA or EIS for the Project. However, when a lead agency prepares environmental statements, there is no need for other cooperating agencies involved in the action or project to duplicate that work. *See* 40 C.F.R. §§ 1501.5 and 1501.6 (1990). The Commission was the lead agency in reviewing Sayles' license, and it was not unreasonable for the Forest Service as a cooperating agency to decline to prepare independently an EA or an EIS.

Accordingly, for the reasons stated herein, the Commission's Order Denying Petitioner's Request for Rehearing of the October 27, 1989, Order Amending and Reinstating the Sayles Flat Project No. 3195 license is affirmed.

AFFIRMED.