952 F.2d 406
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Felis CONCOLOR; Euarctos Americanus; Citizens Concerned
for Wildlife; et al., Plaintiffs-Appellants,
v.
U.S. FOREST SERVICE, Defendant-Appellee.
 No. 90-35593.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 6, 1991.
Decided Jan. 3, 1992.
 
 Before TANG, O'SCANNLAIN and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Citizens Concerned for Wildlife, Wildlife Defense Northwest, Fund for Animals, and Catherine Koehn (collectively, "the Fund") appeal the magistrate judge's grant of partial summary judgment in favor of the United States Forest Service ("the Service").[1] The magistrate judge determined that the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321-4370c, did not require the Service to draft an Environmental Impact Statement (EIS) before issuing special use permits allowing commercial guides to lead cougar and black bear hunts in Oregon national forests. The magistrate judge also found that (1) the Service was required to prepare an Environmental Assessment (EA) in each of the five forests at issue, (2) the EA prepared by the Service, which covered only three of the five forests, met the substantive and procedural requirements of NEPA, and (3) the Service did not violate the National Forest Management Act (NFMA), 16 U.S.C. §§ 1600-1687, by acquiescing in the state's regulation of noncommercial hunting. We affirm.
 
 
 3
 * We review a grant of summary judgment de novo, although findings of fact on which the magistrate judge based his decision are reviewed for clear error. Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). The ruling that the EA complied with NEPA is essentially a legal question and also reviewed de novo. Oregon Natural Resources Council v. Lyng, 882 F.2d 1417, 1422 (9th Cir.1989) (ultimate decision that EIS complies with NEPA and supporting regulations reviewed de novo), amended, 899 F.2d 1565 (1990).
 
 
 4
 Under NEPA, agencies of the federal government generally must include a detailed statement of environmental impact "in every recommendation or report on proposals for ... major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). The Fund urges this court to focus primarily on the significance of the environmental effects of commercial hunting in reaching our decision whether the issuance of the special use permits constitutes "major federal action" within the meaning of NEPA. See City of Davis v. Coleman, 521 F.2d 661, 673 n. 15 (9th Cir.1975) (magnitude of federal action and environmental impact considered jointly); cf. 40 C.F.R. § 1508.18 ("major" in 42 U.S.C. § 4332(2)(c) "reinforces but does not have a meaning independent of" the word "significantly" as used in same section). But see Sierra Club v. Penfold, 857 F.2d 1307, 1312 (9th Cir.1988) (whether federal agency is required to follow NEPA depends on magnitude of project); Foundation for North Am. Wild Sheep v. United States Dep't of Agric., 681 F.2d 1172, 1177 (9th Cir.1982) (issuance of permit constitutes major federal action, so question is whether issuance significantly affected quality of environment). Accepting the Fund's argument for purposes of this appeal, we nevertheless conclude that there is no major federal action with a significant effect on the environment.
 
 
 5
 The management of wildlife and hunting in Oregon national forests is the responsibility of the Oregon Department of Fish and Wildlife (ODFW). The state licenses guides and hunters, regulates the hunting seasons, limits the number of tags issued for game animals subject to controlled hunting, conducts tag drawings to determine hunting privileges, and charges tag fees. The state also monitors the harvest of controlled game by requiring hunters to report hunt results. The ODFW cougar season is limited to a fixed number of tags set each year by the state.[2] The state places no restrictions on the number of tags available during the ODFW general bear hunting season each fall, although bear hunts each spring are controlled and subject to a limited number of tags.[3]
 
 
 6
 The Fund offered no evidence that the special use permits will in any way affect the cougar and bear hunting limits imposed by the state each year. Rather, it argues that hunting with commercial guides will make such hunting as is done more effective, thereby increasing the number of cougars killed within the overall limit. Whether or not the Service allows guided hunting, however, hunters as a whole will be issued the same number of cougar and bear tags for the national forests of Oregon. That limit is up to the state. Under these circumstances we cannot say that the federal action has any major or significant effect on the environment. Therefore, the Service's decision not to file an EIS was neither unreasonable nor arbitrary.[4]
 
 II
 
 7
 The Fund also contends that the EA prepared by the Service was procedurally inadequate under the public notice provisions of NEPA, and that the Service violated regulations adopted pursuant to the National Forest Management Act (NFMA). We affirm the magistrate judge's rulings rejecting both claims.
 
 
 8
 Before issuing its EA, the Service sent a letter to sixteen organizations with a potential interest in the subject matter of the special use permits. The letter specifically asked for comments with respect to the possible issuance of special use permits allowing commercial hunting. The Fund argues that the Service did not specify in the letter that it was preparing an EA, and that the Service did not circulate a draft or final EA for public comment. Yet the Fund points to no requirement in NEPA or its underlying regulations that the Service circulate draft EAs.
 
 
 9
 The regulation relied upon by the Fund reads in relevant part:
 
 Agencies shall:
 
 10
 (a) Make diligent efforts to involve the public in preparing and implementing their NEPA procedures.
 
 
 11
 (b) Provide public notice of NEPA-related hearings, public meetings, and the availability of environmental documents so as to inform those persons and agencies who may be interested or affected.
 
 
 12
 .............................................................
 
 
 13
 ...................
 
 
 14
 * * *
 
 
 15
 (3) In the case of an action with effects primarily of local concern the notice may include:
 
 
 16
 .............................................................
 
 
 17
 ...................
 
 
 18
 * * *
 
 
 19
 (vi) Notice to potentially interested community organizations including small business associations. 40 C.F.R. § 1506.6. The purposes of NEPA with respect to public involvement (i.e., "to inform those persons and agencies who may be interested or affected") were satisfied in this case.
 
 
 20
 The Fund's claims that the Service violated the NFMA are also without merit. Although not entirely clear, the Fund's claims appear to be an attempt to force the Service into de novo evaluation of the state's wildlife management plans.
 
 36 C.F.R. § 241.2 reads in relevant part:
 
 21
 The Chief of the Forest Service ... shall determine the extent to which national forests or portions thereof may be devoted to wildlife protection in combination with other uses and services of the national forests, and, in cooperation with the Fish and Game Department or other constituted authority of the State concerned, he will formulate plans for securing and maintaining desirable populations of wildlife species, and he may enter into such general or specific cooperative agreements with appropriate State officials as are necessary and desirable for such purposes. Officials of the Forest Service will cooperate with State game officials in the planned and orderly removal in accordance with the requirements of State laws of the crop of game, fish, fur-bearers, and other wildlife on national forest lands.
 
 
 22
 This regulation clearly envisions a significant role for the various states and their laws in the regulation of wildlife and hunting. The Fund fails to identify any authority indicating that the agreements between the Service and the state with respect to hunting violate the NFMA. The magistrate judge properly held that the Fund's NFMA claims are contrary to the plain meaning of 36 C.F.R. § 241.2, and that the agreement between the state and the Service is proper in light of the regulation.
 
 
 23
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 United States Magistrate Judge Michael R. Hogan tried this case by consent of the parties
 
 
 [2]
 For example, in 1986 the state authorized and issued tags for 462 cougars; in 1987, the state authorized and issued tags for 457 cougars. See Oregon Dep't of Fish & Wildlife, Oregon Cougar Management Plan 11 (1987). The actual harvest was considerably lower than the authorized harvest. Id. at 10
 
 
 [3]
 The state authorized approximately 200 bear tags each spring until 1987, when the number was increased to 1,100. See Oregon Dep't of Fish & Wildlife, Oregon Black Bear Management Plan 9 (1987)
 
 
 [4]
 Whether the standard of review of the Service's decision not to file an EIS is "arbitrary and capricious," or "unreasonable," is an open question after Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 377, 109 S.Ct. 1851, 1861, 104 L.Ed.2d 377, 394 (1989) (agency decision not to supplement EIS with new information is reviewed under "arbitrary and capricious" standard); cf. LaFlamme v. F.E.R.C., 945 F.2d 1124, 1128-29 (9th Cir.1991) ("We review the Commission's decision not to prepare an EIS by considering whether it reasonably concluded that the Project would have no significant adverse environmental consequences."). We need not resolve the issue, however, because the Service's decision in this case was not improper under either standard