CALIFORNIA SPORTFISHING PRO-TECTION ALLIANCE; Pacific Coast Federation of Fishermen's Associations, Inc.; Frank Egger, M.D.; L. Martin Griffin, Jr., M.D., Petitioners,

Pacific Gas and Electric Company; Round Valley Indian Tribes; Sonoma County Water Agency, Intervenors,

v.

FEDERAL ENERGY REGULATORY COMMISSION, Respondent.

Mendocino County Inland Water and Power Commission; Potter Valley Irrigation District; City of Ukiah; Redwood Valley County Water District; Mendocino County Russian River Flood Control and Water Conservation Improvement District; County of Mendocino; Mendocino County Water Agency, Petitioners,

Sonoma County Water Agency; County of Sonoma, Intervenors,

v.

Federal Energy Regulatory Commission, Respondent.

Friends of the Eel River, Petitioner,

The Round Valley Indian Tribes of the Round Valley Indian Reservation; Sonoma County Water Agency; County of Sonoma, Intervenors,

v.

Federal Energy Regulatory Commission, Respondent.

California Sportfishing Protection Alliance; Friends of the Russian River; Pacific Coast Federation of Fishermen's Associations, Inc.; Frank Egger, M.D.; L. Martin Griffin, Jr., M.D., Petitioners,

County of Sonoma; Sonoma County Water Agency, Intervenors,

v.

Federal Energy Regulatory Commission, Respondent.

Friends of the Eel River, Petitioner,

County of Sonoma; Sonoma County Water Agency, Intervenors,

v.

Federal Energy Regulatory Commission, Respondent.

Nos. 04–73498, 04–73841, 04–73862, 04–75379, 04–75617.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 5, 2006.*

Filed July 18, 2006.

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Before: SCHROEDER, Chief Judge, TROTT and KLEINFELD, Circuit Judges.

### MEMORANDUM **

This case consolidates several petitions to review an order of the Federal Energy Regulatory Commission ("FERC") amending a license for Pacific Gas and Electric ("PG & E") to operate the Potter Valley hydroelectric project. The amendment essentially increased the flow of water in the Eel River in order to protect anadromous fish over what had been authorized in Article 38 of the original, 1983 license. The increase was not as much as California Sportfishing Protection Alliance ("California Sportfishing") and Friends of the Eel River (collectively referred to as "Environmental Petitioners") would have liked, and more than Mendocino County Petitioners ("Mendocino") would have liked. Mendocino's principal argument is that FERC improperly deferred to the National Marine Fisheries Service ("NMFS") Biological Opinion that adopted a baseline intended to approximate the natural ebbs and flows of the river.

#### 1. Environmental Baseline

■ Mendocino, citing 50 C.F.R. § 402.02, argues that because the Porter Valley Irrigation District ("PVID") alternative was marginally better than Article 38, NMFS could not have reasonably concluded the PVID alternative would jeopardize the listed species. Mendocino's argument is foreclosed by *Aluminum Co. of America v. Bonneville Power Administration*, 175 F.3d 1156, 1162 n. 6 (9th Cir. 1999), where we stated, "the regulatory definition of jeopardy, *i.e.*, an appreciable reduction in the likelihood of both survival and recovery, 50 C.F.R. § 402.02, does not

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

mean the agency can 'stay the course' just because doing so has been shown slightly less harmful to the listed species than previous operations." Therefore, NMFS' jeopardy determination was not arbitrary and capricious.

### 2. Best Scientific Data

Environmentalist Petitioners argue that NMFS failed to use the best scientific data because NMFS did not consider decommissioning or adding fishways to Scott Dam. See 50 C.F.R. § 402.14(g)(8).

■ Under the Endangered Species Act, however, NMFS is "not . . . required to pick the best alternative or the one that would most effectively protect the [listed species] from jeopardy." *Southwest Ctr. for Biological Diversity v. United States Bureau of Reclamation,* 143 F.3d 515, 523 (9th Cir.1998). It "need only have adopted a final [reasonable and prudent alternative] which complied with the jeopardy standard and which could be implemented by the agency." *Id.*

In support of its Biological Opinion, NMFS cited more than 150 scientific sources. Petitioners have not cited any evidence that would allow us to second-guess NMFS' expert determination that, in light of the best scientific data available, the reasonable and prudent alternative satisfies the jeopardy standard.

### 3. Numerical Standards

■ Friends of the Eel River argues NMFS' Biological Opinion should have set a specific numerical standard for returning salmonids to evaluate whether the reasonable and prudent alternative meets the jeopardy standard.

NMFS explained that, even under natural conditions, the number of returning salmonids varies widely. Because of this wide variation, NMFS determined that

setting specific numeric goals would be an arbitrary and meaningless exercise. In light of NMFS' explanation and expertise in this area, we cannot hold that its decision was arbitrary and capricious. *Aluminum Co. of Am.,* 175 F.3d at 1162.

### 4. Substantive Flaws in the Reasonable and Prudent Alternative

■ The petitioners argue the reasonable and prudent alternative will increase pikeminnow predation, that the reasonable and prudent alternative is materially indistinguishable from an alternative NMFS found would jeopardize the species, and that the reasonable and prudent alternative will trick salmonids into migrating at the wrong times. NMFS adequately explained why it rejected these arguments. At best, the petitioners have shown there is some scientific dispute about the effects of the proposed action. After a review of the record, we cannot say NMFS acted arbitrarily and capriciously in adopting its view of the scientific evidence instead of the views of the petitioners. *See id.*

### 5. Adverse Modification

Friends of the Eel River contends NMFS applied an invalid definition of "adverse modification." *See Gifford Pinchot Task Force v. United States Fish and Wildlife Serv.,* 378 F.3d 1059, 1069–71 (9th Cir.2004). At the time Friends of the Eel River filed their petition for review, the Fifth Circuit had already invalidated the same regulation. *See Sierra Club v. United States Fish & Wildlife Serv.,* 245 F.3d 434, 441–42 (5th Cir.2001). Nevertheless, Friends failed to raise the issue in its petition for rehearing of FERC's order. Because Friends failed to raise the issue before the agency, we have no jurisdiction to consider it. 16 U.S.C. § 825l(b).

### 6. National Environmental Policy Act

■ Environmentalist Petitioners argue FERC violated NEPA because it failed to consider decommissioning or adding fishways to Scott Dam. FERC reasonably interpreted Article 39 of the license to allow only limited physical changes to the project unrelated to flow releases. Its interpretation is therefore entitled to deference. *City of Seattle v. FERC*, 923 F.2d 713, 716 (9th Cir.1991).

Environmentalist Petitioners also argue that FERC should have considered decommissioning because Congress could revoke PG & E's license on the payment of just compensation. *See* 16 U.S.C. § 807(a). In this case, FERC reasonably concluded that the possibility Congress would enact project-specific legislation to condemn Scott Dam was too remote to require it to study that option. *See Kilroy v. Ruckelshaus*, 738 F.2d 1448, 1455 (9th Cir.1984).

■ For similar reasons, the Federal Power Act did not require FERC to consider decommissioning the dam or constructing fishways. *See LaFlamme v. FERC*, 945 F.2d 1124, 1128 (9th Cir.1991).

Friends of the Eel River also argues FERC should have considered proposals with wider variations in flow rates than the proposals actually studied. Because Friends did not raise this issue on rehearing of FERC's order amending the license, we lack jurisdiction to consider it. 16 U.S.C. § 825l(b).

### 7. Balancing of Russian River and Eel River Interests

California Sportfishing argues that, in amending the license, FERC should not have balanced the interests of Eel River fisheries with the interests of Russian River water users. California Sportfishing is mistaken. Both NEPA and the Federal Power Act require FERC to consider how its actions affect all aspects of the public interest. 16 U.S.C. § 803(a)(1); 42 U.S.C. § 4332.

■ California Sportfishing also argues the EIS was misleading because it discussed the economic effects of the license amendment on Russian River communities in detail but did not do the same for the Eel River communities. FERC explained, however, that it scrutinized the economic effects of its action on the Russian River communities because those communities depend heavily on water to support their agricultural economies. An economic analysis of the project on the Eel River communities, on the other hand, was not necessary because those communities depend heavily on forestry, and not on agriculture. Therefore, the EIS' economic analysis was not misleading or arbitrary.

### 8. Supplemental Environmental Impact Statements

■ Friends of the Eel River argues FERC should have prepared a Supplemental EIS to allow the public to comment on the DOI/NMFS alternative. However, Friends has not pointed to any significant difference between the PG & E alternative and the DOI/NMFS alternative that the public lacked opportunity to comment upon; nor has Friends explained why comments on the PG & E alternative did not meaningfully inform FERC of the public's view towards the DOI/NMFS alternative as well. Therefore, FERC was not required to prepare a Supplemental EIS on the DOI/NMFS alternative. *California v. Block*, 690 F.2d 753, 772 (9th Cir.1982).

### 9. Supplemental EIS on Reasonable and Prudent Alternative

Friends of the Eel River argues FERC should have prepared a Supplemental EIS to allow the public to comment on the reasonable and prudent alternative.

NMFS, however, after simulating how each alternative would have performed over a 90–year period, concluded, that the DOI/NMFS alternative and reasonable and prudent alternative are "nearly identical." No Supplemental EIS was required.

### 10. Harm to Russian River Fisheries

California Sportfishing argues FERC gave inadequate consideration to studies showing that increased flows to the Russian River could harm listed salmonids. FERC, however, reasoned that this project has little influence on Russian River salmonids. The water the project diverts into the Russian River is first impounded into Lake Mendocino. Then, the state of California must decide whether to release water from Lake Mendocino into the areas of the Russian River where such releases could affect salmonids. Because agricultural industries and municipalities rely heavily on water from Lake Mendocino, FERC found that if FERC were to reduce the amount of water brought into the lake, it was unlikely that California would change the amount of water released from Lake Mendocino into the part of the Russian River with salmonids. Because the project has little influence on the flow in the relevant portions of the Russian River, FERC reasonably concluded the project will have little, if any, effect on Russian River salmonids.

### 11. State–Law Water Rights

California Sportfishing argues that section 9 of the Federal Power Act and its implementing regulation, 18 C.F.R. § 4.201(a)(5), required FERC to give more consideration to state-law water rights. California Sportfishing's argument is foreclosed by *First Iowa Hydro–Electric Co-op. v. Federal Power Comm'n*, 328 U.S. 152, 178, 66 S.Ct. 906, 90 L.Ed. 1143 (1946).

Mendocino argues section 27 of the Federal Power Act required FERC to condemn any effected state-law water rights before it amended the license. *See* 16 U.S.C. § 821. In the alternative, it argues FERC should at least have considered the effect of the action on state-law water rights before it amended the license.

■ On its face, section 27 does not impose any procedural requirements. *See Portland Gen. Elec. Co. v. Federal Power Comm'n*, 328 F.2d 165, 176 (9th Cir.1964). Because section 27 imposes no procedural requirements, FERC did not violate section 27 when it failed to condemn or consider the effects of its action on state-law water rights. *See Wilderness Soc'y v. Tyrrel*, 918 F.2d 813, 816 (9th Cir.1990).

Mendocino also argues NEPA and the Endangered Species Act required FERC to consider state-law water rights. Because Mendocino failed to raise these issues before the agency, we lack jurisdiction to consider them. 16 U.S.C. § 825l(b).

### 12. Consultation with the Forest Service

California Sportfishing would have us read into the language of 16 U.S.C. § 797(e) a requirement that FERC consult with the Forest Service with regard to the National Forest Management Act (16 U.S.C. § 1600 *et seq.*), the Endangered Species Act (16 U.S.C. § 1531 *et seq.*), the Wild and Scenic Rivers Act (16 U.S.C. § 1271 *et seq.*) and NEPA (42 U.S.C. § 4321 *et seq.*). Because the Federal Power Act does not expressly require FERC to consult with the Forest Service regarding these, or any, statutes, we cannot impose such a requirement. *Tyrrel*, 918 F.2d at 816.

*13. Wild and Scenic Rivers Act*

 California Sportfishing argues FERC violated the Wild and Scenic Rivers Act because FERC, and other agencies, failed to prepare a river corridor management plan for the Eel River pursuant to 16 U.S.C. § 1274(d)(2). California Sportfishing's argument fails because section 1274(d)(2) does not impose any duty to prepare a river corridor management plan. *Tyrrel,* 918 F.2d at 818.

*14. Fish and Wildlife Coordination Act*

The Fish and Wildlife Coordination Act requires FERC to consult with the Fish and Wildlife Service. 16 U.S.C. § 662(a)-(b). California Sportfishing claims the agencies relied on inadequate studies during the consultation, but does not explain why those studies were inadequate. California Sportfishing's bare assertion that the studies were inadequate is not enough to undermine our confidence in the multi-year consultation between FERC and the Fish and Wildlife Service.

## CONCLUSION

For the foregoing reasons, the petitions for review are **DENIED**.